IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NOs. 12-453, 13-531 |
| | : | CIVIL ACTION NOs. 21-2932, 21-2951 |
| STEPHEN CHRISTOPHER PYLE | : | |

**<u>MEMORANDUM OPINION</u>**

Smith, J.                                                                                                                             July 20, 2022

Currently before the court are two identical motions under 28 U.S.C. § 2255 to vacate, set aside, or correct a 2014 sentence by a *pro se* movant serving a lengthy federal sentence for threatening to kill an Assistant United States Attorney and committing other offenses. When the movant was sentenced, he qualified for the career offender designation in part because of a 2007 Pennsylvania conviction purportedly for aggravated assault by a prisoner. The movant claims he only recently learned his conviction in 2007, for which he pleaded guilty but mentally ill, was actually for aggravated harassment by a prisoner. Based on this allegedly "newly discovered evidence," the movant seeks to have the court vacate his prior sentence and impose a new sentence that does not include the career offender designation.

The government opposes the motions, claiming, *inter alia*, (1) the motions are untimely, (2) the movant's claim is procedurally defaulted, and (3) the movant cannot allege a non-constitutional error in a section 2255 motion. As explained below, the movant's claims are time-barred because he did not file them within one year of either (1) the date his judgment of conviction became final or (2) the date on which the facts supporting his claim – that he was convicted of aggravated harassment by a prisoner in 2007 – could have been discovered if he had exercised due diligence. In addition, even if the court were to consider his claim, his claim lacks merit. Accordingly, the court will deny both motions.

I.     PROCEDURAL HISTORY

This matter involves two separate criminal actions concerning the *pro se* movant, Stephen Christopher Pyle ("Pyle").

A.     <u>Criminal Action No. 12-453</u>

On August 23, 2012, the grand jury returned a one-count indictment charging Pyle with threatening to assault or murder a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B). *See United States v. Pyle*, Crim. A. No. 12-453 ("*Pyle I*"), Doc. No. 7. Subsequently, the government filed a two-count information charging Pyle with (1) threatening to assault or murder a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) and (b)(4),[1] and

---

[1] The information charged Pyle with "wr[iting] a letter to an Assistant United States Attorney for the Eastern District of Pennsylvania indicating that he owned firearms he would use against and murder the Assistant United States Attorney upon [Pyle's] release from prison." *See* Information at 1–2, *Pyle I*, Doc. No. 25. Regarding the specific facts underlying this charge, Pyle ultimately admitted to:

> . . . In May of 2008, Assistant United States Attorney Alexander Nguyen initiated prosecution of the defendant, Stephen Christopher Pyle, with three counts of threatening to kill and inflict bodily harm upon the president of the United States in the Eastern District of Pennsylvania. The defendant was incarcerated in a Pennsylvania State Correctional Facility when he made these threats. On May 20 of 2010, the defendant was sentenced to 33 months in federal prison for the threats against the president.
>
> Late in October of 2010, the United States Attorney's Office for the Eastern District of Pennsylvania, located at 615 Chestnut Street, Philadelphia, Pennsylvania, received a letter postmarked October 19th, 2010, and addressed to a Alexander Nguyen, Esquire, from Stephen Christopher Pyle, Number HJ6305, Unit Side A-Block, B Side, Cell 13, 10745 Route 18, Albion, Pennsylvania.
>
> . . . The letter is a one page handwritten document that states in pertinent part, I am going to kill when I get out of this state prison, and that is soon. I am going to kill you with my AK-47s, M16s, MP4s, and I am going to set your body on fire, and -- I am going to state what I think the letter said -- bury you in the Delaware River, end quote. The letter continues to verbal rants and closes with, yours truly, Stephen Christopher Pyle. Blue eyes, brown hair, six foot inch, 149 pounds, NJ6305, DOB 12/01/85, age 25.
>
> Thereafter, Deputy U.S. Marshall Stephen Barnes, accompanied by an additional Deputy United States Marshal visited the defendant at the SCI Albion Facility on December 2nd, 2010. During this interview, which was conducted after the defendant waived his Miranda rights, the defendant admitted to writing the letter to Alexander Nguyen, indicating that he was angry with AUSA Nguyen for pushing for more jail time in the defendant's Eastern District of Pennsylvania case.

2

(2) assault on a federal employee in violation of 18 U.S.C. § 111(a)(1) and (b).[2] *See* Information at 1–3, *Pyle I*, Doc. No. 25. On January 3, 2013, Pyle pleaded guilty to both counts before the Honorable James Knoll Gardner, now deceased. *See Pyle I*, Doc. Nos. 40, 71.

---

      When questioned directly about the various weapons mentioned in the letter, the defendant indicated that he does not own any of these weapons, but mentioned them to get the victim's attention. When asked what he hoped to accomplish by writing the letter to the AUSA -- or to AUSA Nguyen, the defendant said, I already accomplished it. I wanted him to know who was going to kill him. The defendant went on to indicate that it was his intention -- excuse me. The defendant went on to indicate that it was his intention is to get out of state prison and kill the victim, saying, it could take me 20 years to get out but I will still do it.

      During the interview, the defendant indicated that he does own a 9mm handgun, which is in the possession of his step-father in California, and that if this was not available, he would walk into a gun store and take a gun and ammo and run out of it, get into a taxi or on a bus, and shoot him at point blank range when he comes out of the U.S. Attorney's Office at the FBI building.

Tr. of Arraignment and Change of Plea Hr'g ("Plea Tr.") at 92–94, *Pyle* I, Doc. No. 71; *see id.* at 94–95 (admitting to facts supporting charge).

[2] The information charged Pyle with assaulting "K.L., [a] contract health care provider at the Federal Detention Center, Philadelphia . . . involving physical contact resulting in bodily injury while K.L. was engaged in her official duties." *See* Information at 3. Regarding the specific facts underlying this charge, Pyle ultimately admitted to:

      . . . While incarcerated at the Federal Detention Center in Philadelphia on August 16th, 2012, the defendant had an appointment to have a chest X-ray performed in the institution as part of his continued treatment for asthma. Kim Lawton, an X-ray technician and contracted health provider at the Federal Detention Center, escorted the defendant to the X-ray room. Mrs. Lawton unlocked and entered the X-ray room with the defendant, who was not wearing restraints. When the two entered the room, the door closed behind them and Mrs. Lawton instructed the defendant to sit in a chair while she prepared the X-ray equipment. Mr. Pyle sat down as instructed.

      Mrs. Lawton was working on the X-ray equipment located at the wall of the room farthest from the door when the defendant suddenly attacked her. The defendant grabbed at Ms. Lawton's pants, trying to pull them down. Mrs. Lawton began screaming and fought with the defendant, attempting to strike the defendant with her knee as she struggled against him. When the defendant failed to pull down Mrs. Lawton's pants, he grabbed her left breast over her clothing. As she was struggling against Mr. Pyle, Mrs. Lawton repeatedly told the defendant to stop what he was doing.

      Finally, Ms. Lawton succeeded in slamming the defendant's head into the X-ray tube, and at this point, the defendant collapsed to the floor. Mrs. Lawton stepped over the defendant, went to the door, where she opened it and screamed for help. As this was occurring, the defendant went to the chair in the room and sat down. Staff members quickly arrived at the X-ray room, where they directed the defendant to get on the floor and placed a then-cooperative defendant, or Mr. Pyle, into restraints.

      The defendant was interviewed by Special Agent John Coyle of the Federal Bureau of Investigation after the incident. The defendant waived his Miranda rights and confessed to attempting to remove the X-ray technician's pants and, when he was unable to do so, to grabbing her breast with his right hand over her clothing. The defendant indicated to Special Agent Coyle that what he did was wrong, and went on to say that he was sorry for what he had done. The defendant blamed his actions on voices in his head which told him to hurt people.

Given that Pyle pleaded guilty to the charges in the criminal information, the government filed a motion to dismiss the indictment on February 12, 2014. *See* Gov't's Mot. to Dismiss Indictment at 1–2, *Pyle I*, Doc. No. 57 (indicating government was moving to dismiss indictment pursuant to parties' plea agreement). On June 4, 2014, Judge Gardner entered an order granting the government's motion and dismissing the indictment.[3] *See* June 4, 2014 Order, *Pyle I*, Doc. No. 64.

### B.      Criminal Action No. 13-531

In the second action, the grand jury issued an indictment against Pyle on September 26, 2013. *See United States v. Pyle*, Crim. A. No. 13-531 ("*Pyle II*"), Doc. No. 1. The grand jury charged Pyle with (1) mailing a threatening communication to an Assistant United States Attorney in violation of 18 U.S.C. § 876(c), and (2) using interstate commerce to communicate threats to kill an Assistant United States Attorney, in violation of 18 U.S.C. § 875(c).[4] *See* Indictment at 1–

---

> The victim, Mrs. Lawton, received contusions and bruising to her body and had -- has had muscle pain caused by straining her back while attempting to fight off the defendant.

Plea Tr. at 95–96; *see id.* at 96–97 (admitting to facts supporting charge).

[3] The order also indicated that

> in accord with the Government's Motion, and pursuant to Title 18 U.S.C. § 3926, the United States may at its sole election reinstate any dismissed counts in the event that the charges to which the defendant has pleaded guilty pursuant to the plea agreement are subsequently vacated or set aside by the district court or any appellate court.

June 4, 2014 Order at 1–2, *Pyle I*, Doc. No. 64.

[4] Although a transcript was not prepared of the guilty plea hearing before Judge Gardner, the government represents that the factual basis underlying these charges was as follows:

> On February 21, 2013, the United States Marshall Service was notified that the same Assistant U.S. Attorney who was the victim in Docket No. 12-CR-453-01 received a threatening letter, which again threatened to kill him. Although [Pyle] denied writing this letter, forensic examination of the letter by the FBI laboratory in Quantico confirmed that Pyle's DNA and fingerprints were present on the letter.

Gov't's Resp. in Opp'n to Pet'r's Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody ("Gov't's Resp.") at 2–3, *Pyle II*, Doc. No. 37.

2, *Pyle II*, Doc. No. 1. Pyle pleaded guilty to both charges in the indictment before Judge Gardner on November 14, 2013. *See Pyle II*, Doc. No. 13.

### C. Pyle's Sentence

On June 4, 2014, Judge Gardner began a sentencing hearing with respect to both criminal actions, which continued until June 5, 2014. *See Pyle I*, Doc. Nos. 63, 65, 72, 73; *Pyle II*, Doc. Nos. 24, 25, 31, 32. At the conclusion of the two-day hearing, Judge Gardner sentenced Pyle to an aggregate sentence of 234 months' imprisonment. *See* J. at 3, *Pyle I*, Doc. No. 66; J. at 3, *Pyle II*, Doc. No. 26.

### D. Reassignment of Case and Pyle's Section 2255 Motions

Both cases were reassigned from Judge Gardner's calendar to the undersigned's calendar on November 8, 2017. *See Pyle I*, Doc. No. 69; *Pyle II*, Doc. No. 28. Several years later, Pyle filed motions to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, which the clerk of court docketed on June 29, 2021. *See Pyle I*, Doc. No. 75; *Pyle II*, Doc. No. 34. Pyle also filed two amended section 2255 motions on July 20, 2021. *See Pyle I*, Doc. No. 76; *Pyle II*, Doc. No. 35. The court directed the government to file a response to the amended motions on August 11, 2021, and denied the original motions as moot. *See Pyle I*, Doc. No. 77; *Pyle II*, Doc. No. 36. The government filed its response to the amended section 2255 motions on September 3, 2021. *See Pyle II*, Doc. No. 37.[5] Pyle's amended section 2255 motions, which are identical in all material respects, are now ripe for disposition.

---

[5] Although the court directed the government to file its response to both motions, the government only docketed a response at Criminal Action No. 13-531. *See Pyle II*, Doc. No. 37. Nevertheless, as Pyle's amended motions are identical in all relevant respects, and the government addresses both amended motions in its response, the court has considered the response as applying to both amended motions.

## II.     DISCUSSION

### A.     Law Generally Applicable to Section 2255 Motions

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct their sentence. Motions filed "pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) (citing *Davis v. United States*, 417 U.S. 333, 343 (1974)). A federal prisoner may file a section 2255 motion when: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack." *United States v. Kelley*, No. 3:12-CR-130, 2017 WL 1078172, at *2 (M.D. Pa. Mar. 22, 2017) (citing 28 U.S.C. § 2255(a)).

To obtain relief under section 2255, a movant must demonstrate a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). Further, the contended "error must present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *United States v. Williams*, 615 F.2d 585, 589 (3d Cir. 1980) (citations and internal quotation marks omitted).

Generally, a movant is entitled to a hearing on their section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). Accordingly, the court may dismiss a section 2255 motion without a hearing "where the record affirmatively indicates that the claim for relief is without merit." *Page v. United States*, 462 F.2d 932, 933 (3d Cir. 1972).

B. **The Parties' Arguments**

In his amended section 2255 motions, Pyle argues the court should reduce his sentence because of "newly discovered evidence." Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody ("*Pyle I* Am. Mot.") at ECF p. 4, *Pyle I*, Doc. No. 76; Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody ("*Pyle II* Am. Mot.") at ECF p. 4, *Pyle II*, Doc. No. 35. This "newly discovered evidence" apparently consists of a purported January 4, 2017 "Order to Release on Parole," which shows that Pyle had received a prior state sentence for "aggravated harassment by a prisoner" in 2007. Based on this "new" information, Pyle contends Judge Gardner improperly sentenced him as a career offender after Judge Gardner mistakenly identified his prior conviction for "aggravated harassment by a prisoner" as "aggravated assault." *Pyle I* Am. Mot. at ECF p. 4; *Pyle II* Am. Mot. at ECF p. 4. Pyle asserts Judge Gardner used this mischaracterization as a predicate "crime of violence" for career offender status, but that because aggravated harassment does not qualify as a violent offense, this court should remove his career offender status and reduce his sentence to 92–115 months' imprisonment. *Pyle I* Am. Mot. at ECF p. 4; *Pyle II* Am. Mot. at ECF p. 4.

In the government's response to the amended motions, it argues: (1) Pyle did not receive ineffective assistance of counsel, (2) the motions are untimely, (3) Pyle's claim is procedurally defaulted, and (4) Pyle cannot allege a non-constitutional error in a section 2255 motion. *See* Gov't's Resp. at 6–31.

Before considering the merits of the claim Pyle brings in his motions, the court must address whether he timely filed the motion. As detailed below, because the court finds the claim asserted in the motions is untimely, the court will deny the motions.[6]

---

[6] As the evidence in the record conclusively demonstrates Pyle is not entitled to the relief he seeks, the court addresses Pyle's amended section 2255 motions without a hearing.

### C. Analysis

#### 1. Timeliness

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), section 2255 motions filed by federal prisoners are generally subject to a one-year limitations period. *See* 28 U.S.C. § 2255(f). As to when this one-year limitations period begins to run, section 2255(f) provides, in relevant part:

> The limitation period shall run from the latest of–
>
> **(1)** the date on which the judgment of conviction becomes final;
>
> **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

It is unclear from Pyle's amended motions how he is claiming he timely filed these section 2255 motions. To the extent Pyle is attempting to claim timeliness under section 2255(f)(1), the court notes that a judgment of conviction becomes final for a "defendant [who] does not pursue a timely direct appeal to the court of appeals, . . . on the date on which the time for filing such an appeal expired." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). Here, Judge Gardner entered Pyle's judgment of sentence on July 22, 2014. *See Pyle I*, Doc. No. 66; *Pyle* II, Doc. No. 26. Because Pyle did not pursue a direct appeal, his judgments of conviction became final, for the purposes of section 2255, 14 days later, on August 5, 2014, when his time to file a direct appeal expired. *See* Fed. R. App. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must

be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal."). Therefore, Pyle had until August 5, 2015 to timely file a section 2255 motion under section 2255(f)(1). Pyle filed his original motions on June 7, 2021.[7] Because Pyle filed his initial section 2255 motions nearly six years after the limitations period had run, they would be untimely under section 2255(f)(1).

It appears that Pyle could also be attempting to claim timeliness under section 2255(f)(4), which is one of the "three limited, alternative circumstances in which the one-year limitations period will begin to run," *United States v. Green*, 898 F.3d 315, 318 (3d Cir. 2018), and which allows the limitations period to begin to run on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Under section 2255(f)(4), "the prisoner has one year to file from the date on which he should have discovered the facts underlying the claims made in the § 2255 motion." *United States v. Johnson*, 590 F. App'x 176, 178–79 (3d Cir. 2014) (citing *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000)). The duty to exercise due diligence required by section 2255(f)(4) begins to run when the movant "'is in a position to realize that he has an interest' in pursuing further action." *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 287 (3d Cir. 2021) (quoting *Johnson v. United States*, 544 U.S. 295, 308 (2005)). "Thus, until something in the [movant]'s case 'clearly shows that diligence is in order,' § 2255(f)(4) will not be triggered." *Id.* (quoting *Johnson*, 544 U.S. at 308) (other citation omitted).

---

[7] The federal "prisoner mailbox rule" provides that a *pro se* prisoner's petition is deemed filed "at the time petitioner delivered it to prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 275–76 (1988). Here, Pyle included declarations that he provided his section 2255 motions to prison officials for mailing to the clerk of court on June 7, 2021. *See Pyle I*, Doc. No. 75 at ECF p. 12; *Pyle II*, Doc. No. 34 at ECF p. 12. The court has used this date as the filing date.

Here, even if Pyle is attempting to proceed under section 2255(f)(4), the result is the same: his section 2255 motions are untimely. The motions are untimely because Pyle has not shown that he could not have, by exercising due diligence, discovered the facts supporting his claim well prior to one year before he filed his section 2255 motions. In this regard, Pyle's claim has two factual components: The first is that Judge Gardner determined he was convicted for aggravated assault; the second is that he was actually convicted for aggravated harassment by a prisoner.

Concerning the first factual component, this component was easily discoverable to Pyle at the time of his sentencing hearing. As Judge Gardner was indicating his reasons for imposing his sentence in the case, Judge Gardner explained that Pyle's criminal history was one of the aggravating factors in the case. *See* Tr. of Sentencing Hr'g – Day Two, June 5, 2014 ("Day Two Tr."), at 11, *Pyle II*, Doc. No. 32 ("The aggravating factors in this case include the seriousness of the offenses to which the defendant pled guilty, his criminal history, and the defendant's mental health history, which I viewed as both an aggravating factor and a mitigating factor for reasons I will explain."). In this regard, Judge Gardner stated Pyle's "criminal history is disconcerting, as his convictions involve criminal attempt to commit rape, ***aggravated assault by a prisoner***, and threats to kill and inflict bodily harm upon the President of the United States."[8] *Id.* at 11–12 (emphasis added). Thus, at the time of his sentencing, Pyle was aware that Judge Gardner believed he had been convicted of aggravated assault by a prisoner.

Regarding the second factual component, Pyle appears to argue he only became aware of his prior conviction for aggravated harassment by a prisoner when he received an "Order to

---

[8] It appears that Judge Gardner indicated that Pyle had been convicted of aggravated assault by a prisoner because it was indicated in the presentence report as part of Pyle's criminal history. To the extent that this is accurate, Pyle would have been aware of the inclusion of it in the report via his discussion with his counsel. *See, e.g.*, Tr. of Sentencing Hr'g, June 4, 2014, at 28, Doc. No. 31 ("THE COURT: Have you discussed with your client, the defendant, the presentence report on a timely basis? MS. MEEHAN: Yes, Your Honor.").

10

Release on Parole," dated January 13, 2016,[9] for "the first time" in May 2021. *See Pyle I* Am. Mot. at ECF p. 4; *Pyle II* Am. Mot. at ECF p. 4. Because this document identified his prior conviction as "aggravated harassment by a prisoner," *Pyle I* Am. Mot. at ECF p. 13; *Pyle II* Am. Mot. at ECF p. 13, Pyle calls this document his "newly discovered evidence" in support of his motions. *Pyle I* Am. Mot. at ECF pp. 4, 11; *Pyle II* Am. Mot. at ECF pp. 4, 11.

Nevertheless, despite Pyle's attempt to construe the "Order to Release on Parole" as "new," the court cannot possibly construe the fact of his prior conviction for aggravated harassment by a prisoner as new based on what transpired before the state court. There, Pyle pleaded guilty but mentally ill to the "aggravated harassment by a prisoner" charge in the Court of Common Pleas of Berks County on December 18, 2007.[10] *See* Gov't's Resp., Ex. B, Doc. No. 37-2. As illustrated by the state court documents the government attached to its response, by the time Pyle pleaded guilty to his federal charges, he was well-aware (or at worst, should have been well-aware) of the nature of his prior conviction, even if Judge Gardner improperly identified his prior conviction as "aggravated assault."

---

[9] In his amended motions, Pyle asserts that this document is dated January 4, 2017, *see Pyle I* Am. Mot. at ECF p. 4; *Pyle II* Am. Mot. at ECF p. 4. It appears that the document was signed and dated on January 13, 2016, but also contains a note that Pyle's actual date of release on parole will be "1/4/17." *See Pyle I* Am. Mot. at ECF p. 13; *Pyle II* Am. Mot. at ECF p. 13.

[10] Pennsylvania allows a criminal defendant to plead guilty but mentally ill:

> **(b) Plea of guilty but mentally ill.**--A person who waives his right to trial may plead guilty but mentally ill. No plea of guilty but mentally ill may be accepted by the trial judge until he has examined all reports prepared pursuant to the Rules of Criminal Procedure, has held a hearing on the sole issue of the defendant's mental illness at which either party may present evidence and is satisfied that the defendant was mentally ill at the time of the offense to which the plea is entered. If the trial judge refuses to accept a plea of guilty but mentally ill, the defendant shall be permitted to withdraw his plea. A defendant whose plea is not accepted by the court shall be entitled to a jury trial, except that if a defendant subsequently waives his right to a jury trial, the judge who presided at the hearing on mental illness shall not preside at the trial.

18 Pa. C.S. § 314(b).

In this regard, the state trial court appears to have completed a form sentencing order, which shows that on December 18, 2007, Pyle was pleading guilty but mentally ill to aggravated harassment by a prisoner in violation of 18 Pa. C.S. § 2703.1 and receiving a sentence of incarceration for a minimum of three months to a maximum of not more than 24 months. *See id.* at ECF p. 4. Pyle signed the bottom of this document. *See id.* In addition, there is a "Statement Accompanying Defendant's Request to Enter a Guilty [But Mentally Ill] Plea" ("Guilty Plea Agreement"), which shows that Pyle was, pursuant to an agreement with the Commonwealth, pleading guilty but mentally ill to aggravated harassment by a prisoner and receiving the aforementioned sentence. *See id.* at ECF pp. 5–7. This Guilty Plea Agreement contains Pyle's signature at the bottom of the first two pages, *see id.* at ECF pp. 5–6, and his signature and the date on the final page, *see id.* at ECF p. 7.[11]

This portion of the state court record demonstratively shows Pyle knew he was pleading guilty but mentally ill to the charge of aggravated harassment by a prisoner and not to any other charge. While the court recognizes the competency issue possibly presented by Pyle's particular plea in that case, there is no indication from those documents alone that Pyle would not have known he was pleading guilty to aggravated harassment by a prisoner and not aggravated assault. At bottom, this evidence belies Pyle's argument that he would have learned, for the first time on May 21, 2021, that he pleaded guilty to aggravated harassment by a prisoner, and not to aggravated

---

[11] Regarding this final signature, just above the signature the agreement states:

> I understand my rights contained in this statement. The answers contained here are my answers, and they are true. I desire to plead guilty of my own free will, because I committed the offenses listed. This statement contains the entire agreement between myself and the Commonwealth of Pennsylvania, and I understand that I am bound by the statements which I have made here.

Gov't's Resp., Ex. B at ECF p. 7.

12

assault as indicated in the presentence report and as determined by Judge Gardner, in December 2007.

In short, Pyle knew Judge Gardner believed he had been convicted for aggravated assault by a prisoner at the time of his sentencing hearing. This was the "particular time" that "clearly shows that diligence is in order." *Johnson*, 544 U.S. at 308. Yet, Pyle has not asserted he took any action after that proceeding to attempt to correct the record as to his prior conviction until he filed his section 2255 motions in these cases. In addition, Pyle has not identified any reason why he would not have been able to discover the facts surrounding his purported claim of error well prior to May 2021. Thus, "there can be no reasonable dispute" that Pyle, through exercising due diligence, could have become aware of the facts supporting his claim in the amended section 2255 motions, at least as early as the time of his sentencing hearing in early June 2014. *Gordon v. Finley*, Crim. A. No. 09-441, Civ. A. No. 20-224, 2021 WL 84057, at *4 (E.D. Pa. Jan. 11, 2021). As such, the instant motions are untimely even if the court considers the applicability of section 2255(f)(4).

Although the amended section 2255 motions are untimely, the court may still consider the merits of Pyle's argument if there is a basis to equitably toll the limitations period. The AEDPA's one-year limitations period is "subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). As to the first element, the "diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence." *Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013) (citing *Holland*, 560

U.S. at 653). A reasonable diligence determination is "a subjective test: it must be considered in light of the particular circumstances of the case." *Id.* (citations omitted). In evaluating the second element, Pyle must "in some extraordinary way [have] been prevented from asserting his . . . rights." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) (citations omitted), *overruled in part on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (en banc).

In this case, Pyle sets forth no evidence that he was pursuing his rights diligently or that extraordinary circumstances prevented him from doing so. Pyle could have alerted his counsel to Judge Gardner's error at the time of sentencing or have informed Judge Gardner that his prior conviction was improperly recorded. The court finds the circumstances of this matter do not warrant equitable tolling of the one-year statute of limitations. Because Pyle's motions are untimely, the court must deny them. For the sake of thoroughness, the court will briefly address the merits of his amended motions.

## 2.     Merits

Even if the court found Pyle filed his motions in a timely manner or that equitable tolling was warranted, the motions would still fail on the merits. Section 2255 provides relief only when a sentence was "imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Pyle's claim that the court improperly classified him as a career offender does not satisfy the first three bases for section 2255 relief. He does not assert his sentence violates the constitution or federal law, nor does he argue that the court lacked jurisdiction to impose the sentence. He also cannot argue his 234-month sentence exceeds the maximum authorized by law. As such, to justify

receiving section 2255 relief, Pyle's claim based on an incorrect career offender enhancement must "otherwise subject" his sentence to collateral attack. 28 U.S.C. § 2255(a). More specifically, he must present a "fundamental defect which inherently results in a complete miscarriage of justice [or] 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Hill*, 368 U.S. at 428 (citations omitted).

These "[n]onconstitutional claims that otherwise subject a sentence to collateral attack fall between two poles." *United States v. Folk*, 954 F.3d 597, 602 (3d Cir. 2020) (citing *United States v. Doe*, 810 F.3d 132, 155 (3d Cir. 2015)). At one end of the spectrum are "plainly cognizable claims, such as a federal prisoner's claims that he is 'either actually innocent of his crime' or that his 'prior conviction used to enhance his sentence has been vacated[.]'" *Id.* (quoting *Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014) (en banc)). "On the other end are plainly noncognizable claims, which include technical procedural violations that do not prejudice a defendant." *Id.* (citing *Peguero v. United States*, 526 U.S. 23, 27–28 (1999)).

Pyle's claims fall within the noncognizable designation. In this regard, "incorrect career-offender enhancement under the advisory guidelines is not cognizable under § 2255 because it is not a fundamental defect that inherently results in a complete miscarriage of justice." *Id.* at 604. "Because the Guidelines are advisory and merely one factor considered within a sentencing court's discretion, an incorrect career-offender enhancement is not a fundamental defect inherently resulting in a complete miscarriage of justice." *Id.* As such, so long as a district court "imposes a sentence within the statutory limits for an offense, the criminal proceeding will not be 'infected with any error of fact or law of the 'fundamental' character.'" *Id.* at 605 (quoting *United States v. Addonizio*, 442 U.S. 178, 186 (1979)).

Here, as Judge Gardner explained during the sentencing hearing, the U.S. Probation Office calculated an advisory guideline sentence range for Pyle of 210 to 262 months. Day Two Tr. at 11. In addition, Judge Gardner explained that "the possible total maximum punishment which [Pyle] could have received for the . . . crimes [was] 45 years in prison." *Id.* at 13–14. Thus, Pyle's ultimate sentence of 234 months not only fell within the middle of the advisory guideline range, but it fell well below the possible statutory maximum. As the transcript of Pyle's sentencing hearing illustrates, Judge Gardner engaged in a thorough analysis of the circumstances of Pyle's criminal cases and the relevant sentencing factors, and he crafted an individualized sentence for Pyle. In challenging his career-offender enhancement under the advisory guidelines, Pyle has failed to present a cognizable claim under section 2255, so, even if he had timely filed his motions, the court would have to deny them.[12]

### D.  Certificate of Appealability

To be entitled to a certificate of appealability, Pyle must show, *inter alia*, reasonable jurists would debate whether this court was correct in its ruling. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) ("To obtain a COA under § 2253, a habeas petitioner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes a showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement further." (internal quotation marks and citation omitted)). The court does not find that a reasonable jurist would

---

[12] Because of the court's resolution of this claim, the court has not addressed the government's arguments that Pyle's claim is procedurally defaulted or that there was no ineffective assistance of counsel. With regard to this latter contention, it does not appear that Pyle has alleged that his prior counsel was ineffective. As for the former claim, because Pyle asserts that he is proceeding under a newly discovered evidence theory, it is unnecessary for the court to address whether the claim is procedurally defaulted as Pyle is claiming that he could not have presented the claim until he filed his initial section 2255 motions.

disagree with the court's assessment of Pyle's claims. Accordingly, the court will not issue a certificate of appealability.

### III.   CONCLUSION

For the reasons set forth above, Pyle's amended section 2255 motions are untimely and meritless. Consequently, the court will deny the amended motions without a hearing because the record conclusively demonstrates Pyle is not entitled to relief. Further, the court will not issue a certificate of appealability.

A separate order follows.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.